UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
UNITED STATES OF AMERICA,
                                          :     **SUPERSEDING INDICTMENT**
          - v. -
                                          :     S1 06 Cr. 2 (RWS)
LEE EDELMAN,
                                          :

               Defendant.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 2 3 2006
```

                    COUNTS ONE THROUGH TEN

                       (Insider Trading)

          The Grand Jury charges:

                 Relevant Entities and Individuals

          1.    At all times relevant to the Indictment, Metron
Technology N.V. ("Metron") was a Netherlands corporation with its
headquarters in San Jose, California, which provided a variety of
services to the semiconductor industry, including equipment
maintenance and product distribution.  Prior to its acquisition
discussed below, Metron's common stock was registered with the
United States Securities and Exchange Commission ("SEC") and was
traded on the NASDAQ stock market under the ticker symbol "MTCH."

          2.    At all times relevant to this Indictment, Applied
Materials, Inc. ("AMI") was a Delaware corporation based in Santa
Clara, California, which supplied products and services to the
global semiconductor industry, including information
infrastructure services.  AMI's common stock was registered with
the SEC and traded on the NASDAQ stock market under the ticker

symbol "AMAT."

3.    At all times relevant to this Indictment, LEE EDELMAN, the defendant, resided in New York, New York.  In or about January 2001, EDELMAN opened a securities brokerage account at Ameritrade, which he maintained at all times relevant to this Indictment, and at or about the time he opened that account, EDELMAN was licensed by the NASD to act as a registered representative.

4.    At various times relevant to this Indictment, an attorney (the "Attorney") was employed by a large law firm based in New York, New York (the "Law Firm"), which also had offices in California.

5.    From in or about September 2003, through in or about July 2004, LEE EDELMAN, the defendant, was involved in a romantic relationship with the Attorney, and during that time, from in or about Spring 2004 through in or about the end of July 2004, EDELMAN lived with the Attorney at the Attorney's Manhattan apartment (the "Apartment").

                    The Fraudulent Scheme

6.    From in or about June 2004 to in or about July 2004, LEE EDELMAN, the defendant, schemed to defraud investors in Metron common stock by purchasing Metron Stock based on material, nonpublic information obtained by him from counsel for AMI, in violation of EDELMAN's promises and duties of trust and confidentiality, as set forth below.

2

7.    In or about Spring 2004, AMI discussed with Metron a potential acquisition by AMI of Metron.  In connection with that proposed acquisition, AMI retained the Law Firm to represent AMI in the negotiations with Metron.

8.    On or about June 25, 2004, the Attorney was assigned by the Law Firm to work with other lawyers from the Law Firm on the legal representation of AMI in connection with the anticipated AMI acquisition of Metron.  On or about that same day and the next day, in connection with that legal work, the Attorney received, at the Apartment, materials and documents that identified the parties to the proposed acquisition transaction. At that time, LEE EDELMAN, the defendant, was living with the Attorney at the Apartment, and was in a position to observe those materials.

9.    During the ensuing days and weeks, the Attorney continued to conduct legal work, both at the Law Firm's offices and from the Apartment, on behalf of the Law Firm's client, AMI, in preparation for the anticipated acquisition of Metron.  During this time, LEE EDELMAN, the defendant, learned from the Attorney's activities that she was working on a deal involving the acquisition by AMI of Metron.  At that time, in the context of their romantic relationship, EDELMAN and the Attorney had a history, pattern and practice of sharing confidences, such that EDELMAN knew that the Attorney expected EDLEMAN to maintain any

3

information he learned in the context of their relationship concerning the anticipated AMI/Metron deal in confidence, and not to use it for his own personal benefit.

10.  Nevertheless, beginning on or about July 1, 2004, using the confidential, material, nonpublic information obtained from the Attorney in the context of their romantic relationship, LEE EDELMAN, the defendant, purchased securities issued by Metron.  Specifically, EDELMAN made the following purchases of Metron common stock, using his Ameritrade account:

| Date of Purchase | Number of Shares of MTCH | Price ($) per Share of MTCH | Total Amount Paid |
|---|---|---|---|
| 7/1/2004 | 1,500 | 2.38 | $3,581 |
| 7/1/2004 | 600 | 2.39 | $1,434 |
| 7/6/2004 | 2,000 | 2.40 | $4,811 |

11.  In addition, on or about July 11, 2004, when the Attorney was doing legal work at the Apartment related to the anticipated acquisition, she had a discussion with LEE EDELMAN, the defendant, who was also then at the Apartment.  During the course of that discussion, the Attorney identified Metron, the target of the anticipated acquisition transaction the Attorney was working on.  The Attorney also informed EDELMAN during that conversation that the information concerning the parties to the anticipated acquisition was confidential in nature, that the information had been imparted to the Attorney in confidence, in

4

the context of her legal work, and the Attorney further told
EDELMAN that he (EDELMAN) could not use the information for any
purpose.  EDELMAN said he understood.

12.  Nevertheless, continuing to use the confidential,
material, nonpublic information obtained by him from the Attorney
in the context of their romantic relationship, and despite his
agreement with the Attorney that he (EDELMAN) would not use the
information, LEE EDELMAN, the defendant, purchased additional
securities issued by Metron.  Specifically, EDELMAN made the
following purchases, among others, of Metron common stock, using
his Ameritrade account:

| Date of Purchase | Number of Shares of MTCH | Price ($) per Share of MTCH | Total Amount Paid |
|---|---|---|---|
| 7/12/2004 | 500 | 2.67 | $1,345 |
| 7/15/2004 | 1,600 | 2.70 | $4,331 |
| 8/2/2004 | 200 | 2.49 | $509 |
| 8/2/2004 | 100 | 2.49 | $249 |
| 8/2/2004 | 700 | 2.50 | $1,750 |
| 8/2/2004 | 1,007 | 2.48 | $2,508 |
| 8/4/2004 | 1,000 | 2.41 | $2,421 |
| 8/5/2004 | 1,000 | 2.48 | $2,491 |
| 8/5/2004 | 1,000 | 2.42 | $2,431 |
| 8/12/2004 | 1,000 | 2.19 | $2,201 |

13.  After the close of trading on or about August 16,
2004, AMI publicly announced that it had entered into agreements

to acquire the operating subsidiaries and businesses of Metron
(the "Acquisition Announcement").  Prior to the Acquisition
Announcement, Metron's stock had been trending steadily lower
since in or about February 2004, at prices ranging between
approximately $2.00 and approximately $3.50 per share, and on or
about August 16, 2004 (the last trading day preceding the
Acquisition Announcement), Metron's stock closed at approximately
$2.20.  On or about August 17, 2004 -- the day following the
Acquisition Announcement -- Metron's stock price closed at
approximately $4.36, up approximately $2.16, or approximately 98%
over the previous day's close.

14.    On or about August 17, 2004, following the
Acquisition Announcement and the substantial resulting rise in
Metron's stock price, LEE EDELMAN, the defendant, sold his Metron
stock.

15.    As a result of his illegal trading on material,
nonpublic information concerning the Metron acquisition, and in
breach of duties of trust and confidentiality owed by LEE
EDELMAN, the defendant, to the Attorney, and owed by the Attorney
to the Law Firm and to AMI, EDELMAN obtained profits of
approximately $22,786.

### Statutory Allegation

16.    On or about the dates set forth below, in the
Southern District of New York and elsewhere, LEE EDELMAN, the

defendant, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons in connection with the purchase and sale of Metron securities as specified below:

| COUNT | DATE | SECURITIES ORDERED TO BE PURCHASED |
|---|---|---|
| ONE | 7/1/2004 | 2,100 shares |
| TWO | 7/6/2004 | 2,000 shares |
| THREE | 7/12/2004 | 500 shares |
| FOUR | 7/15/2004 | 1,600 shares |
| FIVE | 8/2/2004 | 1,000 shares |
| SIX | 8/2/2004 | 1,007 shares |

| COUNT | DATE | SECURITIES ORDERED TO BE PURCHASED |
|-------|------|-----------------------------------|
| SEVEN | 8/4/2004 | 1,000 shares |
| EIGHT | 8/5/2004 | 1,000 shares |
| NINE | 8/5/2004 | 1,000 shares |
| TEN | 8/12/2004 | 1,000 shares |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5 and
240.10b5-2, and Title 18, United States Code, Section 2).

COUNT ELEVEN

(False Statements)

The Grand Jury further charges:

17.   The allegations of paragraphs 1 through 15 are
repeated and realleged as though fully set forth herein.

18.   In or about November 2004, the SEC began
investigating securities trading undertaken based on material,
nonpublic information pertaining to Metron.

19.   Also in or about November 2004, the SEC identified
trading by LEE EDELMAN, the defendant, in Metron stock, in
connection with the investigation described in the previous
paragraph.

20.   On or about January 7, 2005, the SEC issued a
formal order directing an investigation of trading undertaken
based on material, nonpublic information pertaining to Metron.

21.   On or about January 27, 2005, in connection with
the investigation described in paragraphs 18 through 20 above,

8

SEC attorneys in San Francisco, California, interviewed LEE
EDELMAN, the defendant, who was at that time in New York, New
York, over the telephone.  During the course of that telephone
interview, EDELMAN made several false and misleading statements
to the SEC attorneys, as described more fully below.

### Statutory Allegation

22.  On or about January 27, 2005, in the Southern
District of New York and elsewhere, LEE EDELMAN, the defendant
unlawfully, willfully, and knowingly, in a matter within the
jurisdiction of the executive branch of the Government of the
United States, falsified, concealed, and covered up by trick,
scheme, and device material facts, and made materially false,
fictitious, and fraudulent statements and representations, to
wit, EDELMAN participated, from New York, New York, in an
interview by telephone with SEC staff attorneys in California, in
which he made the following false statements and concealed and
covered up facts that were material to the SEC's investigation:

### Specification One

EDELMAN falsely stated that he did not know anyone who
worked at the Law Firm.

### Specification Two

EDELMAN falsely stated that he dated the Attorney more
than a year prior to January 27, 2005.

### Specification Three

EDELMAN falsely stated that he had last spoken to the Attorney more than a year prior to January 27, 2005.

### Specification Four

EDELMAN falsely stated that he did not know whether the Attorney was working on a deal relating to Metron.

### Specification Five

EDELMAN falsely stated that he spent "very little" time at the Apartment.

### Specification Six

EDELMAN falsely stated that he never saw any materials or things the Attorney brought home from work when EDELMAN was at the Apartment.

### Specification Seven

EDELMAN falsely stated the Attorney never talked to him (EDELMAN) about anything related to Metron.

### Specification Eight

EDELMAN falsely stated that he did not know and had no indication that Metron would be acquired by AMI when he purchased Metron's stock.

(Title 18, United States Code, Sections 1001(a)(1) and (2)).

10

COUNT TWELVE

(Obstruction of Justice)

The Grand Jury further charges:

23.   The allegations of paragraphs 1 through 15 and 18 through 21 are repeated and realleged as though fully set forth herein.

24.   On or about January 27, 2005, in the Southern District of New York and elsewhere, LEE EDELMAN unlawfully, willfully and knowingly, corruptly influenced, obstructed and impeded, and endeavored to influence, obstruct and impede the due and proper administration of the law under which a pending proceeding was being had before a department and agency of the United States, namely, the SEC, by providing and causing to be provided false and misleading information to the SEC relating to EDELMAN's purchases of Metron stock.

(Title 18, United States Code, Sections 1505, 1515(b) and 2).

COUNT THIRTEEN

(Obstruction of Official Proceeding)

The Grand Jury further charges:

25.   The allegations of paragraphs 1 through 15, 17 and 18 are repeated and realleged as though fully set forth herein.

26.   On or about January 27, 2005, in the Southern District of New York and elsewhere, LEE EDELMAN unlawfully, willfully and knowingly, corruptly obstructed, influenced, and

11

impeded an official proceeding, and attempted to do so, namely, a
proceeding of the SEC, by providing and causing to be provided
false and misleading information to the SEC relating to EDELMAN's
purchases of Metron stock.

(Title 18, United States Code, Sections 1512(c)(2) and 2).

## FORFEITURE ALLEGATION

27.  As the result of committing securities fraud in
violation of Title 15, United States Code, Sections 78j(b) &
78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5
and 240.10b5-2; and Title 18, United States Code, Section 2, as
alleged in Counts One through Ten of this Indictment, defendant
LEE EDELMAN shall forfeit to the United States pursuant to 18
U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real
and personal, that constitutes or is derived from proceeds
traceable to the commission of the offense, including but not
limited to a sum of money equal to approximately $22,786 in
United States currency, representing the amount of proceeds
obtained as a result of the offense.

### Substitute Asset Provision

28.  If any of the above-described forfeitable
property, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due
diligence;

(2) has been transferred or sold to, or deposited with,

12

a third person;

(3) has been placed beyond the jurisdiction of the

Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which

cannot be subdivided without difficulty;


it is the intent of the United States, pursuant to 21 U.S.C. §

853(p), to seek forfeiture of any other property of said

defendant up to the value of the above forfeitable property.


(Title 18, United States Code, Sections 981 and 1343, Title 28,
United States Code, Section 2461, Title 15, United States Code,
Sections 78j(b) and 78ff, and Title 17, Code of Federal
Regulations, Sections 240.10b-5 and 240.10b5-2).

_____
Foreperson

_____
MICHAEL J. GARCIA
United States Attorney

13

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

LEE EDELMAN,

Defendant.

### SUPERSEDING INDICTMENT

S1 06 Cr. 2 (RWS)

(Title 15, United States Code, Sections
78j(b) & 78ff; Title 17, Code of Federal
Regulations, Sections 240.10b-5 and
240.10b5-2; and Title 18, United States
Code, Sections 1001, 1505, 1512, 1515 and
2)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

Foreperson.