UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

   - against -

LEE EDELMAN,

           Defendant.

------------------------------------------X

06 Cr. 0002 (RWS)

SENTENCING OPINION

4/24/06

Sweet, D.J.,

Defendant Lee Edelman ("Edelman") has pleaded guilty to one count of insider trading in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2. For the reasons set forth below, Edelman will be sentenced to three years of probation, subject to the further conditions set forth herein, including but not limited to six months of home confinement. Edelman will also be required to pay a fine of $22,786 and a special assessment of $100.

## Prior Proceedings

Edelman surrendered on January 5, 2006, and was released on his own recognizance. An indictment was filed in the Southern District of New York on February 23, 2006, charging that between the dates of July 1, 2004 and August 12, 2004, Edelman engaged in insider trading in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2. The indictment further charged that on or about January 27, 2005, Edelman made false statements in

violation of 18 U.S.C. § 1001(a)(1)-(2). On March 6, 2006, Edelman appeared before the Honorable James C. Francis of this District and pleaded guilty to one count of insider trading in accordance with a plea agreement. Defendant's sentencing is scheduled for April 24, 2006.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care,

2

>                    or other correctional treatment in the most
>                    effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range
>     established for --
>
>     (A) the applicable category of offense committed
>         by the applicable category of defendant as set
>         forth in the guidelines ...;
>
> (5) any pertinent policy statement ... [issued by the
>     Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities
>     among defendants with similar records who have been
>     found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of
>     the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

Edelman was born in Brooklyn, New York on July 10, 1971 and is the only child born to the union of Martin Edelman and Nanette Hodyss. He has one half-sister, age forty-three, who is from his mother's prior relationship and was adopted by his father.

Edelman stated that he was raised in Brooklyn for the first four years of his life. At that time, his parents divorced

3

and his mother moved the family to North Miami Beach, Florida. They reportedly remained there for about four years until his mother became ill with bone cancer. She and the children returned to Brooklyn and were cared for by a friend of their mother. The defendant's mother succumbed to cancer about two years later.

After his mother's death, Edelman and his half-sister moved to Long Beach, New York to live with his father. Edelman noted that living with his father was awkward because he had not had much contact with him after the divorce. He further stated that his father was an alcoholic. The defendant's father worked nights as a cab driver, so Edelman rarely saw him and recalls essentially raising himself since the age of ten. While his father was not physically abusive towards him or his half-sister, he was reportedly very verbally and mentally abusive. Edelman recalled examples of his father coming home from work drunk in the middle of the night and waking the defendant up to pick up dog feces in the backyard or to change the toilet paper roll because the end was not facing in the right direction.

Edelman advised that both he and his half-sister left the home when they were about 18. He reports that as an adult, he has a better relationship with his father now and added that his father stopped drinking about four years ago, due mostly to health problems that would be exacerbated by continued drinking.

4

The defendant has never been married or fathered any children and is not presently involved in a relationship. He has resided alone at his present address in Manhattan for about three years.

The defendant stands 5' 9" tall and weighs approximately 164 pounds. He has brown eyes and black hair. He reports having no tattoos or identifying marks, but has a small scar beneath his right eye from a childhood accident wherein he fell on a nail.

Edelman stated that he is in good physical health. The defendant reported no history of mental or emotional problems and presented as alert, oriented and cooperative during his pre-sentence interview. He related that in the past year he has seen both a psychiatrist and psychologist as a result of stress arising from the instant case. He stated that he was prescribed Zanax, which he takes as needed when he has difficulty sleeping. Edelman stated that he saw the psychiatrist a total of two times and the psychologist about four or five times and added that he stopped attending sessions because he did not feel they were helpful. He added that he prefers to relieve stress by working out and does not feel the need for treatment or counseling in the future.

Edelman stated that he has experimented with several drugs in the past. He began smoking marijuana at about age fifteen and used the drug on an almost daily basis until the age of

5

eighteen. He reportedly first tried cocaine at about age seventeen and has used the drug very sporadically over the years, estimating that he last used cocaine over two years ago. As a teen, he also reportedly experimented with mescaline and acid on a few occasions. As an adult, he reportedly used ecstasy a total of six times, with the last time being about five years ago. He reports that he consumes alcohol on a social basis. Edelman stated that he does not feel the need for any form of counseling or treatment and reports that he is very health conscious and works out regularly in a gym. Edelman submitted to a drug screening, which returned with negative results.

Edelman attended Long Beach High School and graduated in 1989. He then attended Nassau Community College and earned 63 credits before transferring to SUNY Albany. Transcripts reflect that Edelman earned a Bachelor of Science degree in Accounting/Business Administration in May 1995, graduating Magna Cum Laude. In 1999, Edelman entered the graduate program at Columbia University and was awarded a Master of Business Administration in May 2001.

Edelman previously had a CPA license (Maryland) as well as Series 7 and 63 Brokers' licenses, all of which have since expired and cannot be renewed as a result of his conviction.

Since March 2005, the defendant has been employed by OpenLink Financial, a software development company located in Uniondale, New York. He explained that from March 2005 until January 2006, he worked as a Senior Client Services Consultant, but his title and job function were changed to Analyst in January 2006 after he was indicted in the instant case. Edelman stated that he presently earns about $80,000 per year and that his salary was reduced from about $105,000 after the job change.

From December 2003 until February 2005, Edelman worked as an independent financial and securities consultant and worked with companies such as Freddie Mac and UBS Securities. He reported that he generally earned about $80 per hour.

From March 2003 until December 2003, the defendant was employed as a consultant by Argonet Capital Management and conducted research concerning stock and bond trading. He reportedly earned about $88,000.

The defendant was unemployed from December 2002 until March 2003.

From July 2001 until December 2002, the defendant worked as a trader for Bear Stearns and earned a base salary of $85,000, but with bonuses, earned over $100,000.

7

With regard to his future plans, Edelman stated that he is uncertain what his future will hold because his employment options will be limited as he will not be allowed to work in the financial industry due to his conviction. He added that he will likely remain in his current job and see where it leads, but also expressed a desire to open his own business and suggested a wine and liquor store as a possibility.

The defendant completed a financial statement in which he reports assets consisting of a checking account with a balance of about $12,800, a 401(k) account with a net balance of about $7,900, a 1999 Volkswagen valued at about $6000, and a watch valued at $750. He reports liabilities consisting of two student loans with balances of approximately $63,000 and $42,000 respectively. With regard to monthly cash flow, Edelman reported net income of about $4,000 and expenses of near that amount, leaving a cash flow of less than $100. A credit check revealed no revolving credit card debt and confirmed the reported student loan debts.

**The Offense Conduct**

From Spring 2004 to in or about July 2004, Edelman was involved in a romantic relationship with an attorney (the "Attorney") who was employed by a large law firm based in New York City (the "Law Firm"). At the time, Edelman lived with the Attorney at the Attorney's Manhattan apartment (the "Apartment").

8

On or about June 25, 2004, the Attorney was assigned by the Law Firm to work on legal issues relating to the anticipated acquisition by Applied Materials, Inc. ("AMI") of Metron Technology N.V. ("Metron"). Edelman soon learned of the planned acquisition from the Attorney's activities. In the context of their romantic relationship, Edelman and the Attorney had a history, pattern, and practice of sharing confidences, such that Edelman knew that the Attorney expected him to maintain the confidentiality of any material nonpublic information he learned in the context of their relationship, and not to use it for his own personal benefit. Nevertheless, beginning on or about July 1, 2004, using the confidential, material, nonpublic information obtained from the Attorney in the context of their romantic relationship, Edelman purchased securities issued by Metron.

In addition, on or about July 11, 2004, the Attorney had a discussion with Edelman in which she explicitly identified Metron as the target of the anticipated acquisition transaction she was working on. The Attorney also informed Edelman during that conversation that the information was confidential in nature, and that Edelman could not use the information for any purpose. Edelman said he understood. Nevertheless, between July 12, 2004 and August 12, 2004, Edelman purchased additional securities issued by Metron.

After the close of trading on August 16, 2004, AMI publicly announced that it had entered into an agreement to acquire Metron (the "Acquisition Announcement"). Prior to the Acquisition Announcement, Metron's stock had been trending steadily lower since in or about February 2004, at prices ranging between approximately $2.00 and approximately $3.50 per share. On or about August 17, 2004 -- the day following the Acquisition Announcement -- Metron's stock price closed at approximately $4.36, up approximately $2.16, 98% over the previous day's close. Edelman sold his Metron stock that same day.

As a result of his illegal trading on material nonpublic information concerning the Metron acquisition, and in breach of duties of trust and confidentiality owed by Edelman to the Attorney, and owed by the Attorney to the Law Firm and to AMI, Edelman obtained profits of approximately $22,786.

**The Relevant Statutory Provisions**

The statutory maximum term of imprisonment is twenty years, pursuant to 15 U.S.C. §§ 78j(b) and 78ff. If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years. 18 U.S.C. 3583(b)(2).

Edelman is eligible for not less than one nor more than five year's probation by statute. 18 U.S.C. § 3561(c)(1). Because

10

the offense is a felony, one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the Court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine that may be imposed is $5,000,000, pursuant to 15 U.S.C. § 78ff.

Full restitution to the victim is required pursuant to 18 U.S.C. §§ 3663A and 3664. However, the Government is unable to identify any specific victims under the facts of the offense.

A special assessment in the amount of $100 is mandatory. 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2005 edition of the United States Sentencing Commission Guidelines Manual ("the Guidelines") has been used in this case for calculation purposes. U.S.S.G. § 1B1.11(a).

The guideline for a violation of 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5 is found in § 2B1.4, which provides for a base offense level of eight. U.S.S.G § 2B1.4. Because the gain resulting from the offense exceeded $5,000, the offense level is increased by four levels. U.S.S.G. §§ 2B1.4, 2B1.1(b)

Based on his plea allocution, Edelman has shown recognition of responsibility for his offense. Thus, the offense level is reduced 2 levels. U.S.S.G. § 3E1.1(a).

The defendant's resulting adjusted offense level is ten.

The defendant has no known criminal convictions. Therefore, Edelman has zero criminal history points and a Criminal History Category of I.

Based on a total offense level of ten and a Criminal History Category of I, the Guidelines' range for imprisonment is six to twelve months. The minimum term of imprisonment may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of

12

imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one month is satisfied by imprisonment; or (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment. U.S.S.G. § 5C1.1(c).

The Guidelines' range for a term of supervised release is at least two years but not more than three years. U.S.S.G. § 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

Because the applicable guideline range is in Zone B of the Sentencing Table, the defendant is eligible for probation provided that the Court imposes a condition that substitutes intermittent confinement, community confinement, or home detention for at least six months, pursuant to § 5B1.1(a)(2). If the Court imposes probation, the term must be at least one year but not more than five years because the offense level for the instant offense is ten, pursuant to §5B1.2(a)(1).

13

The Guidelines recommend a fine range of $2,000 to $5,000,000 for the instant offense. U.S.S.G. § 5E1.2(c)(3)-(4).

The Guidelines suggest that subject to the defendant's ability to pay, in imposing a fine, the Court should consider the expected costs to the Government of any imprisonment, probation, or supervised release. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,933.80 to be used for imprisonment, a monthly cost of $287.73 for supervision, and a monthly cost of $1,675.23 for community confinement.

The Guidelines recommend full restitution to any identifiable victims, U.S.S.G. § 5E1.1(a)(1), but as stated above, the Government is unable to identify any specific victims.

### The Remaining Factors of 18 U.S.C. § 3553(a)

Having considered the Guidelines calculations, as set forth above, the Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a). Pursuant to all of the factors, it is hereby determined that a guideline sentence is warranted.

**The Sentence**

In light of his steady employment history and lack of prior criminal convictions, the Court believes that the defendant is unlikely to become involved in future criminal conduct, and that the interests of justice can be served by a sentence at the low end of the Guidelines range. Edelman is hereby sentenced to a three year term of probation, six months of which are to be served through home confinement.

As Edelman has kept all court appearances, has been in compliance with all terms and conditions of his pretrial release, and is not viewed as a flight risk or a danger to the community, he is deemed a good candidate for voluntary surrender. Edelman is therefore directed to report to the nearest United States Probation Office within 72 hours of imposition of sentence to commence a three year term of probation. It is recommended that Edelman be supervised by the district of his residence.

As mandatory conditions of this supervised release, Edelman shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) submit himself to a special condition requiring drug treatment and testing; and (5) cooperate in the collection of DNA as directed by the probation

officer. Furthermore, the standard conditions of supervision (1-13) shall be imposed with the following special conditions:

(1) Edelman shall comply with the conditions of home confinement for a period of six months. During this time he will remain at his place of residence except for employment and other activities approved by his probation officer. He will maintain a telephone at his place of residence without call forwarding, a modem, caller ID, call waiting, or portable cordless telephones for the above period. At the direction of his probation officer, he shall wear an electronic monitoring device and follow electronic monitoring procedures specified by his probation officer. Home confinement shall commence on a date to be determined by the probation officer. Should home confinement be imposed, the defendant shall pay the costs of home confinement on a self payment or copayment basis as directed by the probation officer.

(2) Edelman shall provide the probation officer with access to any requested financial information.

(3) Edelman shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), Edelman is hereby required to pay a fine of $22,786, to be paid in full not later than six months prior to the completion of the term of supervision. Because the defendant does not appear to have the ability to pay interest, the interest requirement in this case shall be waived.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing set for April 24, 2006.

It is so ordered.

**New York, NY**
**April  24 , 2006**

───────────────────────
ROBERT W. SWEET
U.S.D.J.